## J. C. WANDS and WIFE v. M. M. BRIEN.

1. TAX SALE. *Description.* A tax sale of less than the whole of a town lot in these words: ."Eighty-four feet of this lot," does not sufficiently define the quantity of land bid off, and is void.

2. SAME. *Same.* A sale of so many feet front of a town lot and running back of equal width to the depth of the lot would be good; and so, it seems, would be a sale of a definite fractional part of the lot, as for example one-tenth, one-fourth, or one-half, or of so many acres of a tract of land.

### FROM DAVIDSON.

Appeal from the Chancery Court at Nashville. A. G. MERRITT, Ch.

T. W. HALEY for complainants.

W. G. BRIEN & SON for defendants.

COOPER, J., delivered the opinion of the court.

Ejectment bill to recover a lot in the city of Nashville. The complainants, Wands and wife, claim title to the lot in right of the wife as the heir of W. H. Townsend, deceased. The defendant holds possession under a sale of the lot as the property of W. H. Townsend for the taxes of 1875. The chancellor held that the tax sale was void because made not only for the unpaid taxes and costs, but for a penalty imposed by the act of 1873, chapter 118, section 61, which in his opinion was repealed by the act of 1875, chapter 102, section 3. Upon the defendant's appeal the Referees find that the penalty

specified was not repealed by the act of 1875, and so this court has held in two cases: *State* v. *Duncan,* 3 Lea, 679, 691; *Nance* v. *Hopkins,* 10 Lea, 508. But the Referees have further reported that the ·chancellor's decree in favor of the complainants should be affirmed because the land sold, being less than, the whole lot, is not sufficiently described in the judgment of condemnation of the circuit court to enable the purchaser to be put in possession by a writ for that purpose. The defendant excepts to the report upon the ground that the lot is sufficiently described. The only question before us, therefore, is whether the land sold is sufficiently described to identify it.

In their bill the complainants describe the lot as: "Lot No. 10 in Campbell's plan of South Nashville lots, fronting on Campbell, now Ash street, 93½ feet, beginning at Richard Deshaser's west corner on said street, running thence 93½ feet to an alley, thence with said alley 30 feet to Elizabeth Bradlaw's line, thence with her line to Deshaser's line, thence with Deshaser's line to the beginning." The title deeds of W. H. Townsend, which are offered in evidence by the complainants, give the same description, except they speak of the lot as "part of lot No. 10." The tax collector, in his report and certificate of sale, made to the circuit court, and embodied in the judgment of that court, describes the lot thus:

| District 1, Ward No. 7. | Name of owner, Townsend, W. H. | Lot No. 10. | Description, Ash street, 30 feet front by 30 feet deep. |
|---|---|---|---|

The taxes, costs and penalty are then properly given under appropriate headings, with a column show-

ing the total sum due to be $5.98. Then follows in a separate column, under the heading "Amount and description," these words: "Tax, penalty and costs bid for 84 feet of this lot." The name of the purchaser, M. M. Brien, and the amount of his bid, $5.98, are added in separate columns under proper headings. The court, after reciting the findings of fact, ordered and decreed "that the title to the property sold as aforesaid be vested in the several purchasers respectively as named in said report," and that writs of possession issue as directed by law. A writ of possession was issued at the expiration of the two years allowed for redemption, under which the defendant was put in possession. The description of the lot as given in the writ is: "Lot No. 10, Ash street, 85 feet front by 30 deep, tax, penalties and costs bid for 84 feet of above lot, city of Nashville, sold as the property of W. H. Townsend, for failure to pay taxes thereon."

The objection, it will be noticed, is not to the description of the lot itself as assessed for taxes. Every requirement of the acts of 1873, chapter 118, section 6, and 1875, chapter 81, section 2, in the description of town lots has been complied with in that description. The description is, however, inaccurate in that it gives the number of front feet at 30 instead of $93\frac{1}{2}$. But the Act of 1873, chapter 118, section 69, expressly provides that no sale shall be invalid because the size and dimensions of a lot have not been "precisely named." The objection is to the description of that part of the lot which was sold,

upon the ground that it is insufficient to enable the court to put the purchaser in possession. The description is: "Tax, penalty and costs bid for 84 feet of this lot." And the question is whether the words "84 feet of this lot," namely of a lot 93½ feet front by 30 feet deep, sufficiently identifies the part sold.

We concur with the Referees in the opinion that the description is insufficient, but not for the same reason. They base their conclusion upon the difficulty of locating the 84 feet. "No one can tell," they say, "at what precise point on Ash street Brien's 84 feet begins or ends." But the act of 1873, chapter 118, section 65, provides that the "least quantity" of the lot which may be taken for the taxes "shall be run off from the beginning corner, and running with at least one line of the tract." The collector's certificate, and the judgment of condemnation show that the sale in this instance was strictly in accordance with the directions of the statute. And the title papers of the delinquent tax-payer show where this beginning corner was. But the real difficulty is that the bid as reported specifies no quantity of the land, unless we construe "84 feet" to mean 84 square feet, or 84 feet square. We may infer that the intention was to bid for 84 feet front, running back of equal width to the full depth of the lot. And such a bid, if expressed and certified, would undoubtedly be good. So a bid of one-tenth, or one-fourth or one-half of a lot or tract of land, or of so many acres would be good, for it could be run off as prescribed by the statute. The

Wands and Wife *v.* Brien.

rule in tax sales, as universally settled, is that nothing must be left to inference, and that everything must be determined with reasonable certainty. The rights of the purchaser depend upon a strict compliance with the requirements of the law. The failure in this case is in not defining sufficiently the "quantity" of land bid off.

Exceptions to the report overruled, and the chancellor's decree affirmed with costs.

# A TRIBUTE

TO THE MEMORY OF

# Hon. ROBERT McFARLAND,

ONE OF THE

## SUPREME JUDGES OF TENNESSEE.

KNOXVILLE, OCTOBER 8, 1884.

The Supreme Court Bar of East Tennessee, assembled to pay their tribute of respect to the memory of Judge ROBERT McFARLAND, and to express their admiration of his character, as man and judge, offer this memorial to preserve the same in enduring record:

Judge McFarland was born at the hamlet of Springvale, Jefferson County (now Hamblen), Tennessee, April 15, 1832. He died, after a long rheumatic illness, at his home in Morristown, of bronchial hemorrhage, at one o'clock, on Thursday morning, October 2, 1884.

As his life, so was his death, calm and peaceful and hopeful. He was of Scotch-Irish descent. His grandfather, Robert McFarland, born in North Carolina, of Scotch-Irish parents, removed thence to Virginia, where he enlisted in the patriot army of the Revolution, and served as lieutenant in the memorable

battle of King's Mountain.    In 1783 he emigrated to Tennessee and settled on the waters of the French Broad, where he resided for nearly half a century.

His son, Col. Robert McFarland, father of the judge, served also as lieutenant of riflemen in the American army during the war of 1812, on the northern frontier, and distinguished himself by his gallantry at the battle of Sandy Creek; in later years he was a colonel of the State militia.    He died when his son Robert was but twelve years old, leaving to his family no inheritance but his good name.

His widow, the daughter of James Scott, a native of Ireland, was thus left in indigence to rear her family.    She was a woman of rare intelligence, dauntless courage and strong maternal ambition, and, in the midst of increasing toil and responsibility, she devoted her life to the welfare and instruction of her children.    She had resolved to add to Robert's rich endowment by nature the benefit of an education; and by her own precept and example she exercised a controlling influence in the development of his character. With the aid of her elder son, William (late Congressman from Tennessee), and her son-in-law, Judge Barton, now of Chattanooga, then of Greeneville, she was enabled to send him to school at Tusculum College, near Greeneville, where he lived with his brother-in-law, and received a good English education.    Here also he read law with Judge Barton, and was admitted to the bar at Greeneville in 1856.

Tribute to the Memory of Judge Robert McFarland.

He had for his first partner Robert Johnson, son of Governor Andrew Johnson. Shortly thereafter he formed a partnership with Col. M. Thornburgh, of New Market, for practice in the Second Circuit, and in that circuit and in Greene County he continued to practice until his elevation to the Supreme Bench, having for his partners after the civil war Robert M. McKee, Esq., at Greeneville, and in the Second Circuit Col. J. M. Thornburgh, son of his former partner.

His preference was for chancery practice, and on the occasion of his first appearance before Chancellor Lucky, he exhibited those traits of character that so distinguished him in after-life, carrying his cause single-handed to successful issue against the combined resistance of the leaders of the bar in the First Circuit, then distinguished by the names of Nelson, Milligan, Deaderick, Maxwell, Arnold and Haynes, with whom he soon took high rank in his profession. His first appearance in the Supreme Court is reported at September term, 1856, in Tally v. Ayers, 3 Sneed, 677; after which his appearance is regular and frequent in the reported cases, giving evidence that in the six years of his *ante bellum* practice he had met with unusual success, for a beginner, in establishing himself at the bar. His course was stopped, however, by the war, which interrupted the administration of law, and he reluctantly laid aside his books and took up the sword.

He deplored the war, its causes, its terrible con-

Tribute to the Memory of Judge Robert McFarland.

comitants and its direful necessities.    He was a man
of peace; he loved social order, and was devoted to
the law.    But, compelled by the flagrancy of civil
war, whose coming he could not avert and whose
fury he could not abate, to choose sides in the inter-
necine strife, from a high sense of public duty he
volunteered in the Confederate army, and participated
in the organization of the Thirty-first Regiment Ten-
nessee Infantry (Col. Wm. M. Bradford), at Knox-
ville, in March, 1862.    He was chosen Major of this
regiment, and held this position till the close of the
war, serving in the campaign in Kentucky, in 1862, and
afterward in East Tennessee and Mississippi, being
surrendered at Vicksburg, on the 4th of July, 1863.
Exchanged in September, the regiment was reorganized
as cavalry, and one-half of it, under Major McFar-
land, was ordered to Virginia in December, where it
bore its part in the memorable campaign of Early in
the valley of Virginia, the raid into Maryland, and
the skirmishing about Washington, in 1864.    He was a
cool, brave, gallant officer, not fond of war, yet always
at his post, discharging his duty with fidelity and
unflinching courage.

Though despairing of the continuance of war after
the Hampton Roads Conference, as a fruitless pro-
longation of a hopeless struggle, he remained with
his command, loyally fighting for the failing cause
until the conquered banner was furled by Lee, when
he endeavored to join his command to Johnson's

Tribute to the Memory of Judge Robert McFarland.

army in Carolina.    But hearing of his surrender also, the faithful remnant of the wearied veterans turned their faces homeward, and were paroled at Nashville, in May, 1865.

He resumed his practice in the Second Circuit in 1866, and in Greene county in 1867, and engaged in it earnestly and successfully until he went upon the bench.    His first reported opinion is in Bayless v. Estes, 1 Heis., 78, when he was serving by special commission in lieu of Judge Nelson in the many cases wherein he was incompetent in the fall of 1870.

In December, 1871, Judge Nelson resigned, and Judge McFarland was commissioned by Gov. Brown to fill the vacancy.    In August following he was chosen to serve the unexpired term, and in 1878 was re-elected for the full term.    He continued on the bench until December, 1882, when he was forced, by a severe attack of rheumatism, to leave the bench. He cherished, during his long illness, the earnest hope of restoration to health and return to his post, but was never able to resume the bench.

Conscious of the approach of death and without fear of it, he said, with Christian stoicism: "It is as natural to die as to be born."    Thus "sustained and soothed by an unfaltering trust," he peacefully passed away "like one who wraps the drapery of his couch about him, and lies down to pleasant dreams."

In 1859 he married Miss Jennie, daughter of H. B. Baker, Esq., of Greeneville.    They had three chil-

dren—two daughters and a son—all of whom, with the widow, survive him. Nothing could excel the beauty and happiness of his home life, where existed the confidence, the affection, the reverence and devotion that makes the happy family and the ideal home.

His judicial record of eleven years' continuous service is contained in the Reports from 3 Heiskell to 10 Lea inclusive, and is as free from error as any in the annals of our judicial history.

Considered, as man or judge, the simplicity and purity of his character is a delightful object of contemplation. His sentiments were lofty and noble, his demeanor, modest and unassuming—even to diffidence. He was kind, liberal and generous, slow to promise, scrupulously faithful in performance; grateful for personal favors, and never forgetful of obligation. Though lacking in effusive affection, there was unswerving fidelity in his friendship. Strong in convictions of right, he was singularly free from bigotry and fanaticism. Courteous and polite in his association, he had many friends; but his confidence and intimacy were reserved for a few. He met cordially men of all classes, but commanded respect for his office from all by the quiet dignity of his character and unpretentious purity of his life. He was no politician, and no one ever suspected him of favor or policy in his judicial office. He was religious without display or pretense, charitable without boast or ostentation, tenacious of truth and consecrated to duty.

Free from arrogance, vanity or self-seeking, he devoted his life to the study and exposition of the law, and was ever strong to execute justice and maintain truth. For this he always possessed, in a remarkable degree, the trust of the people and the implicit confidence of the bar.

He was a born lawyer—a judge by nature. He had a logical mind, patient of investigation and trained by reflection rather than much reading. He was singularly free from bias or prejudice, and if as a judge he was not famed for erudition, he fully compensated for its absence by an accurate discrimination, sound judgment and rare practical wisdom. In clearness of vision and perspicuity of statement he was pre-eminent, unrivaled. None ever had occasion to distrust his knowledge of the case, or doubt the meaning of his opinion.

His disposition and habit was, if possible, to solve doubt and determine cases by the application of fundamental principles of law to the facts. In this he resembled the great Chief Justice Marshall; and like Marshall, too, his judicial style was dry and unadorned, void of simile and metaphor and rhetoric. No one will ever seek his opinions for beauty of style or wealth of illustration. But he never failed to be clear and convincing; and though his opinions may not abound in citation of cases to support them, one feels at the conclusion the same serene satisfaction experienced in finishing a geometrical demonstration or a logical syllogism.

His sense of justice was strong, his love of right profound; but above all towered his reverence for law. He could never consent to permit hard cases to make bad law.

In a marked degree, too, he had the judicial temperament, and a singular freedom from the pride of opinion. He weighed and balanced all arguments with an eye single to the law and its requirements. If he had prejudice, he conquered it; if preconception of the law he suspended it, and listened patiently to adverse views; if he had erred, he was open to correction, and readily recalled an erroneous opinion.

No impertinent suggestion, no extraneous consideration ever seemed to divert his mind from the matter to be decided. So entirely judicial was he, so devoted to the solution of the legal problems before him, that nothing ever seemed to interrupt his steady and even progress to a conclusion; this was reached only after a painstaking investigation and impartial consideration of all the material facts in the case before him. His personality, never obtrusive, was lost, or rather absorbed, in legal reflection; so that when he announced his decision, it seemed to the bar not so much the opinion of the court, as the logical, solemn and inevitable judgment of the law.

In correctness of decision, the highest test of a supreme judge, he had no superior. He was not as learned a lawyer as Reese, nor as exact and precise as McKinney, but in clearness of perception,

soundness of judgment and correctness of decision, he rivaled either. The country can boast of a Story, a Kent and a Marshall; East Tennessee has had her Reese, her McKinney and her McFarland.

Our deceased friend has gone before us, but not until, by careful study, profound examination and patient administration of our defective human laws, he had qualified himself to enjoy the comprehension of that higher law, whose seat is the bosom of God and whose voice is the harmony of the world.

Reflecting upon his death, be it

*Resolved*—1. That the State has lost a loyal citizen, a faithful officer, and an able and impartial judge; society a valuable and useful member, and the bar a sincere and trusted friend.

2. That we tender our sympathy and condolence to the widow and family of our deceased friend.

3. That in token of our respect for him, and our reverence for his memory, we request this testimonial to be spread of record on the minutes of the court and published in the next volume of State Reports.

Respectfully submitted,

H. H. INGERSOLL,
J. B. COOKE,
J. M. THORNBURGH,
JAMES T. SHIELDS,
R. M. McKEE,
C. J. SAWYERS.

The Bar having adopted the foregoing memorial,

the chairman of the committee, Judge Ingersoll, presented the same to the court on the next day, and moved that the court admit it to record and direct its publication in ·13th Lea. Judges Cooper and Freeman, for the court, made eloquent and feeling responses to the tribute of the Bar, expressing their high appreciation of Judge McFarland's character, and their sense of loss from his death; and it was ordered that the memorial be recorded and published as requested.

# INDEX.

# INDEX.

ABANDOMMENT.

See PARTNERSHIP.

ACCOMPLICE.

See CRIMINAL LAW.

ACTION.

See DAMAGES; PRINCIPAL AND SURETY.

1. *Lawful act.* It is not unlawful for a railroad company to discharge, nor to publish notice that it will discharge hands for trading with a certain merchant, unless thereby a contract between the company and employes is broken; even then no action lies to the merchant unless the notice be libelous. *Payne* v. *Railroad*, 507.

2. "Threats and intimidation" in a legal sense, import not merely an evil, but an unlawful act about to be done. *Id.*

3. *Malice.* No action lies to the merchant against the company or another for such notice, though it be posted maliciously and operate to deter employes of the company and others from trading with him and thus ruin his business. An act not unlawful, done in a manner not unlawful, though from wicked and malicious motives, and causing injury, is not actionable. *Id.*

ACTIONS, LOCAL AND TRANSITORY.

*Plea in abatement.* Where a justice of the peace in Carroll county issued a civil warrant charging the defendant, a railroad corporation, with "wilfully and negligently burning 300 panels of rail fence, 50 apple trees, 25 acres of timber and forest trees, and two acres of corn in a field," and the defendant pleaded in abatement that the land on which the rails were built, and the trees, timber and corn were growing, was wholly in Benton county. Held by a majority of the court that a demurrer to the plea was properly sustained. *Railroad Company* v. *Weaks*, 148.

ADMINISTRATION.

See CHANBERY PLEADING AND PRACTICE.

1. *Limitation. Request for delay.* The delay of a creditor at the request of an administrator under the Code, secs. 2280, 2785, does not prevent the running of the general statute of limitations. *Bates* v. *Elrod*, 156.

(749)

ADMINISTRATION—*Continued.*

2. *Same. Insolvent estate. Suggestion and advertisement.* It is not the suggestion of insolvency of an estate in the county court, but the suggestion and advertisement thereof under the order of the clerk which operate as an injunction, and constitute the institution of a suit for the administration of the estate, and the best, and perhaps only evidence of the fact, except by consent of parties, is a certified copy of the record. *Id.*

3. A personal representative has no power to convert personalty into realty, and if he does so, it will be considered in equity as personalty and distributed accordingly. *Johnson* v. *Patterson*, 626.

ADMINISTRATOR.

1. *Sale of land to pay debts. Administrator.* The Code, section 2267, *et seq.*, authorizing personal representatives to file petitions for the sale of land to pay debts, does not require the creditors of the estate to be made parties, nor a report of the debts and assets as a preliminary to the exercise of jurisdiction; nor is it any objection that upon taking the account with the administrator he may be found to have personal assets in his hands; and premature action may be validated as to purchasers by a failure to appeal, and subsequent recognition by the court of what has been done. *Ridgely* v. *Bennett*, 210.

2. *Same. Guardian ad litem.* The proceedings in such a case are not avoided upon a writ of error, as to purchasers by the omission of the name of one of several infant defendants in the order appointing the guardian *ad litem*, if the answer be in the name of all, and repeatedly recognized by the court as their answer. The appointment of the guardian *ad litem* need not be renewed upon the filing of an amended and supplemental petition, and the failure of the guardian to swear to a mere formal answer is immaterial. *Id.*

4. *Same. Rights of purchasers.* If the errors complained of do not avoid the proceedings as to third persons, the court will not reverse the decrees for such errors so as to cast a cloud upon the rights of purchasers. *Id.*

ADVANCEMENT.

1. An advancement is a gift by a parent *in presenti* of a portion of the share of his child in his estate which would fall to each child at the parent's death, by the statute of distribution or descent. *Johnson* v. *Patterson*, 626.

2. The intention to make a gift and not an advancement, must be shown by clear and unmistakable proof, to be arrived at from a survey of the conduct and conversation of the donor at or about the time of the gift. *Id.*

ADVANCEMENT—*Continued.*

3. *Interest on.* Interest should be charged on advancements from the time of the death of the ancestor. *Id.*

AGENT.

See MARRIED WOMAN.

ALIENATION.

See ASSETS, REAL.

ANSWER, SIGNED BY SOLICITOR.

See CHANCERY PLEADINGS AND PRACTICE.

APPEAL.

*Bill of exceptions.* Although bill of exceptions is duly made out under act of 1875, an appeal only lies after final judgment. *Johnson v. Patterson,* 234.

ATTACHMENT.

*Check. Priority.* J. D. I. was indebted by judgment to P. and to J. P. I. Having a fund in bank he gave a check, May 27, on the bank to J. P. I., on same day P. commenced attachment suit against J. D. I. and the attachment was levied by garnishing the bank before the check was presented. *Held,* that P. was entitled to the fund. A check is a mere request to pay the bearer or the order of the payee. Until presented and accepted it is inchoate and vests no title or interest in the payee to the fund. *Imboden v. Perrie and Wife,* 504.

ATTORNEY.

See CHANCERY PLEADINGS AND PRACTICE.

1. *Evidence.* Under the Code, section 4754, does not include transactions between attorney and client, that have no element of confidence in them, of which he is competent to testify, *e. g.,* he may prove his client's hand-writing, what money was collected by him, when paid over and to whom paid. *Johnson v. Patterson,* 626.

2. *Pleadings and Practice. Damages.* In an action against an attorney for a failure to bring suit upon accounts placed in his hands for collection, the plaintiff, in order to recover more than nominal damages, must show that the accounts were valid, subsisting debts. *Collier v. Pulliam and Lane,* 114.

ATTORNEYS' FEES.

Counsel, who file and prosecute a bill in the name of certain creditors of an insolvent corporation, on behalf of all creditors, to hold the officers and alleged officers personally liable for any deficiency of

ATTORNEYS' FEES—*Continued.*

assets over the assets assigned in trust for the creditors, and to this end incidentally for an account, settlement and disbursement of the trust assets, whose services are confined to the main purpose of the bill under which nothing is realized, cannot charge their compensation on the trust fund. *Hume* v. *Commercial Bank.* 496.

ASSESSMENT.

See TAXES.

*Taxation.* Under act of 1879, ch. 79, property should be assessed at its value on the 10th January for any year. It seems that if property changes hands after 10th January, an assessment under act of 1879, ch. 79, in the name of the subsequent owner, would be valid, and fix a lien upon the property. *Railroad Company* v. *State,* 348.

ASSETS, REAL.

*Purchaser from devisee.* A purchaser from an heir or devisee, must in order to avoid liability for the ancestor's debts, be able to show that the alienation was *bona fide,* which could not be the case, if he purchased with notice of debts due by the ancestor, that might be made a charge against the lands in the hands of the heir by any proceeding known to our law. Code construed, sections 1762, 1764, 2253 and 2256. *Gibson* v. *Jones,* 684.

ASSIGNEE.

See PARTNERSHIP.

ASSIGNMENT.

See MORTGAGE.

BANK, OFFICER'S POWER TO BIND.

See LIMITATIONS.

BENEFICIARIES.

See TRUST, DEED.

BILL OF EXCEPTIONS.

See APPEAL.

BILLS AND NOTES.

See MARRIED WOMAN.

BONDS.

*Coupons. Interest.* The endorser of a negotiable State bond, whose liability has been fixed by demand of payment of the bond at maturity, protest for non-payment and notice, is thereby rendered liable for the unpaid coupons then attached to the bond, with interest thereon,

**BONDS**—*Continued.*

without a separate presentment for payment of the several coupons as they fell due, protest for non-payment and notice. *Lane* v. *Railroad Company*, 547.

**BURDEN OF PROOF.**

See PLEADING AND PRACTICE; EMPLOYER AND EMPLOYE; DEED OF GIFT.

**CANCELLATION.**

See FIRE INSURANCE.

**CAVEAT EMPTOR.**

See EXECUTION SALE.

**CERTIORARI.**

See CONTEMPT.

**CHANCERY JURISDICTION.**

A creditor cannot by proceeding in chancery (upon a *nulla bona* return), reach and compel a debtor to appropriate money he has obtained by mortgage and which he has in his possession, to the payment of his debt. This case distinguished from *Cresswell* v. *Smith*, 8 Lea, 688. *Webb* v. *Jones*, 200.

**CHANCERY PLEADINGS AND PRACTICE.**

See COLLUSIVE LITIGATION; SEPARATE ESTATE; RES ADJUDICATA.

1. *Minor. Ejectment.* An infant was, by his general guardian, made a party defendant to an action of ejectment, upon the verdict in which the lower court rendered judgment in his favor, and this court against him after he came of age, but without any entry showing appearance by him as an adult, and he filed a bill for the recovery of the land within three years after he came of age: Held, that the judgment in ejectment was no bar to the new suit. *Boro* v. *Harris*, 36.

2. *Appearance by attorney.* A judgment resting upon the unauthorized appearance of an attorney, may be annulled in equity upon a bill filed for the purpose. *Id.*

3. A court of equity will not attempt to compel a party to convey land unless he is a resident within the territorial jurisdiction of the court, although process was served on him while he was within the jurisdiction of the court. *Wicks* v. *Caruthers*, 353.

4. *Decrees upon order pro confesso.* A decree settling the rights of the parties, founded upon an order *pro confesso* after personal service upon a party *sui juris*, is a final decree, and cannot be set aside at a subsequent term, except upon proper proceedings instituted for that

CHANCERY PLEADINGS AND PRACTICE—*Continued.*

purpose. Code construed, sections 3476, 3824, 3829, 4369, 4371, 4375, 4377, 4379. *Johnson* v. *Tomlinson*, 604.

5. *Administration. Insolvent estate.* If, in the administration in chancery of an insolvent estate, the realty be subject to vendors' liens which are enforced in the suit, and the administrator collects the rents, and, in settlements made under orders of the court, is charged with such rents and allowed his disbursements thereof in the payment of debts and expenses of administration by decrees rendered from time to time in confirming reports by the master of such settlements, the reports not being excepted to, neither the court below nor this court upon appeal by the minor heirs of the deceased, can go behind those decrees, the heirs being all the time before the court by guardian ad litem. *Grimstead* v. *Huggins*, 728.

6. *Plea of former suit.* The proper proof to support a plea of a former suit pending is a certified copy of the record. *Parmelee* v. *Railroad Company*, 600.

7. *Mechanic's lien.* To a bill filed to enforce an alleged mechanic's lien for work done, a plea of a former suit pending is insufficient which embodies in it a copy of the former bill showing that it was only for the collection of the debt. *Id.*

8. *Same.* A plea may be good as to part of a bill although pleaded to the whole bill, but if the part cannot be separated, the plea should be overruled altogether, in which case the defendant is entitled to answer. *Id.*

9. *Same.* A plea of a former suit pending may be filed after a continuance of the cause with leave to the defendant to make defense to the bill and the attachment sued out thereon. *Id.*

10. *Same.* An objection to a plea of a former suit pending, that it was not filed in time, cannot be made in this court if not first made in the court below. *Id.*

11. *Signature to answer.* Where oath to answer is waived and the answer is signed by solicitor and not by defendant, it is at most but an irregularity, to be taken advantage of within twenty days after the answer is filed, which may be cured by leave of the court. But the practice in our courts long has been to treat the signing by responsible solicitors sufficient in pleading to which no oath is required. *Stadler* v. *Hertz & Co.*, 315.

12. Exceptions to depositions because taken during trial term of the court are good. *Id.*

13. A note which was evidence of the debt claimed in the bill, and which the bill stated would be filed before the hearing, was filed by

## CHANCERY PLEADINGS AND PRACTICE—*Continued.*

complainants as evidence and so marked by the clerk, became a part of the record without bill of exceptions. *Id.*

14. *Jury in chancery.* Where a rule of the court was published and entered on the minutes, declaring that no jury would be allowed unless demanded on or before the second day of the term, and motion for a jury was made more than a week after beginning of the term. *Held,* not error for the chancellor to refuse to order a jury. *Id.*

15. *Same.* Where in the decree refusing to order a jury, the court recites that it is refused because not applied for within the time required by a general rule of the court, "which rule of the court is hereby made a part of this record and will be certified in case of appeal, with the transcript." *Held,* that this order made the rule of the court a part of the record. *Id.*

16. *Objection to evidence.* Exception to the relevancy or admissibility of matter testified to by a witness, may be made by exceptions to a report of the clerk and master based on such evidence, but a general exception to the competency of the particular witness does not reach the matters of his testimony, if the witness be in fact competent. Such objection goes to the individual and not to the matter. So an objection to an entire deposition when part of it is competent, and part not, will not be noticed by the Supreme Court. *Johnson* v. *Patterson,* 626.

## CHANGE OF RISK.

See FIRE INSURANCE.

## CHARGE OF COURT.

See DAMAGES.

*Charge, special.* When special instructions which were substantially correct as a proposition of law were asked, and the original charge did not contain any equivalent instructions, and there was testimony applicable to the charge requested, it was error to refuse the charge. *Kendrick* v. *Cisco,* 247.

## CHARTERS.

See CORPORATIONS.

## CHECK.

See ATTACHMENT.

## CLERKS.

1. *Where one court is abolished and another established.* Where an existing court is abolished, and another court is established over the same territory and with like jurisdiction, and the business of the former is by the statute transferred to the latter, the latter be-

CLERKS—*Continued.*

comes the legal successor of the former, and its officers are entitled to the possession of the books, papers and effects of its predecessor; and so, as often as changes occur. *State* v. *Cole*, 367.

2. *Sureties upon bond.* If a clerk becomes his own successor having money in his hands, either as clerk or special commissioner and receiver, the old sureties will be released and the new sureties become liable therefor, and the presumption, in the absence of proof to the contrary, is that the money is on hand, and this presumption can only be removed by positive proof to the contrary, or at any rate by the production of the best evidence. The mere fact that the clerk's account in bank was overdrawn at the time is not sufficient, when the proof is clear that there was no defalcation during the first term. *Id.*

3. *Same* Under the provisions of the Code a clerk, who is his own successor, would hold the funds in his hands in the same capacity in which he held them before, either as clerk or special commissioner, and his sureties would be liable accordingly. It would be the same if a succeeding clerk receive funds from his predecessor. *Id.*

CLERK, DUTY OF.

See RECORDS OF COURT.

CODE CONSTRUED.

Administrators, sec. 2267..................................................210
Descent, sec. 2420........................................................145
Divorce, sec. 2456........................................................161
False pretense, sec. 4901.................................................294
Final decree, secs. 3476, 3824–9, 3369–71–75–77–79.......................604
Grand jury, sec. 5087.....................................................53
Guardians, sec. 2493......................................................29
Insolvency, sec. 2755.....................................................159
Limitations, sec. 2782*b*.................................................571
Lunacy, secs. 3681, 3692–5–6, 4196.......................................574
Municipal corporations, secs. 1392, 1394.................................611
Persons under disability, sec. 3182......................................206
Printer's fee, sec. 2150.................................................256
Probate of wills, sec. 2182..............................................461
Railroads, sec. 4927*b, c, d*.............................................2
Roads, sec. 1620.........................................................672
Scire facias, sec. 4425*c*...............................................110
Witnesses, sec. 4754.....................................................627

COLLATERAL SECURITY.

See STOCKS; CONVERSION.

COLLUSIVE LITIGATION.

Where complainant and certain defendants collude to defeat another defendant in litigation, and the other defendant is discharged for want of proof, neither of the colluding parties is entitled to demand a decree against the other because of admissions made in aid of their scheme. The court in its discretion decrees a dismissal of the bill, and taxes all the colluding parties jointly with costs. *Hunter* v. *Gardenhire*, 658.

COMMERCIAL AGENCY.

See TAX.

CONSTITUTIONAL LAW.

1. *Sale of cotton.* The act of the Legislature, Acts of 1879, ch. 106, entitled "An act to prevent the sale of cotton between sunset and sunrise" is constitutional and valid. *Truss* v. *The State*, 311.

2. *Privilege Tax. Drummers.* The act of 1881, chapter 96, section 16, amending the Taxing District law, which provides that drummers, and all persons not having a regular licensed house of business in the Taxing District, offering for sale, or selling goods, wares and merchandise therein by sample, shall be required to pay a specified privilege tax, is constitutional and valid. *Bobbins* v. *Taxing District*, 303.

3. *Partial law.* The act of 1883, ch. 138, creates a privilege, and limits the exercise of the privilege to certain corporations, and is a partial law, and unconstitutional. *Daly* v. *The State*, 228.

4. *Keeping a gaming house.* Act of 1883, chapter 230, embraces but one subject and is constitutional. "Etc" at the end and part of the title of an act means "and others," and "and-so-forth," and is not to be rejected. "Such" refers to something which has preceded and means "of that particular character specified." An act may be valid if the intention of the Legislature can be intelligently gathered from the whole act, however awkwardly expressed. The object and purpose of the Constitution in providing that an act shall embrace but one subject, which shall be expressed in the title, is to give notice to the legislator of the subject of legislation, and it is sufficient so long as the subject-matter of the act is germane to that expressed in the title, whether the body enlarges or restricts the title. If a statute admits two constructions, one of which would render it constitutional, and the other unconstitutional, the former should be adopted. And a doubt in relation to its constitutionality should be resolved in favor of the act. *Garvin* v. *The State*, 162.

CONTRACT.

See PLEADING AND PRACTICE.

CONTRACTS, LEGISLATIVE.

*Taxes.* Under the Constitution of 1834, the Legislature had power to grant to incorporations created by it, either partial or total immunity from taxation for any length of time it deemed proper. *The State* v. *Butler*, 400.

CONTRACT, DISAFFIRMANCE.

See MARRIAGE SETTLEMENT.

CONTRACT, DUTY OF COURT TO CONSTRUE.

See PARTNERSHIP.

CONTRACT, JOINT.

See PARTNERSHIP.

CONTEMPT.

See CRIMINAL LAW.

A judgment of imprisonment for contempt is subject to revision by the Supreme Court brought up by writ of *certiorari.* *Warner* v. *State*, 52.

CONVERSION.

1. *Collateral security.* A conversion is the appropriation of the thing to the party's own use, or its destruction or exercising dominion over it in exclusion or defiance of the owner's right or withholding possession under a claim of title inconsistent with his own. *Bank* v. *Farrington*, 333.

2. Where F. & W. borrowed money of bank on a note giving stock in gas company as collateral security, which was endorsed in blank, with power of attorney to transfer on the books of the company, under an agreement in the note that the bank might protect itself by sale of the stock, and before note fell due, the bank had the stock transferred to it on the books of the gas company, but not intending thereby to prejudice the rights of F. & W., and afterwards the bank insisted on its right to the dividend declared on the stock and on the right to vote it, but tendered F. a proxy to vote same. *Held*, these facts do not show a conversion of the stock by the bank. *Id.*

CORPORATION.

See STOCKS.

1. *Tort of agent.* Corporations are liable for the tortious acts of agents in the interest of the corporation, and in pursuance of general or special authority, if within the apparent scope of corporate powers. *Payne* v. *Railroad Company*, 507.

CORPORATION—*Continued.*

2. *May exercise new powers. When.* The State may authorize a corporation to alter its original enterprise and exercise new franchises to any extent without impairing any contract with the corporators. The effect of such a law is merely permissive, and takes away no existing power and affects no existing right. *State* v. *Butler*, 400.

3. *Special provision as to taxation of.* The provision in an act of incorporation that the company "shall pay to the State an annual tax of one-half of one per cent on each share of the capital stock subscribed, which shall be in lieu of all other taxes" is valid, and relieves the corporation from all other taxes, State or municipal. Under this provision its real estate necessary for the transaction of its business, is not subject to taxation. *Id.*

4. *Charters inviolable.* Neither the Legislature nor a Constitutional Convention has the power to violate the contract between the State and a corporation contained in the charter of the latter. *Id.*

COSTS.

See COLLUSIVE LITIGATION; FEES, PRINTER.

*Chancellor's discretion as to.* The discretion of a chancellor as to taxation of costs is a legal discretion, and if not properly exercised may be reviewed and corrected by the Supreme Court. *Snapp* v. *Purcell*, 693.

COUNTY COURT, JURISDICTION.

See ROAD LAW; LUNATICS.

1. *Minors.* The jurisdiction of the county court over infants and their estates, and over the appointment and removal of guardians, is purely statutory, and to that extent the jurisdiction of the chancery court is concurrent. *Lake* v. *McDavitt*, 26.

2. *Same. Chancery Court. Same.* The court of chancery is a superior court, possessing a common law jurisdiction over infants and their estates, in addition to the jurisdiction conferred by statute, and may take control of an infant's property, and in the absence of a general guardian, appoint a limited guardian of the person or estate, or a custodian or receiver of the property. *Id.*

3. *Same. Guardian, General. Duties.* But the general guardian of our statutes, who is required to give a personal bond with good security for the performance of duty and protection of the ward, is always to be preferred, and whenever appointed is entitled at once to demand and receive the property of the ward from the chancery court, or its special appointee. *Id.*

COUPONS.

See BONDS.

COURTS ABOLISHED.

See CLERKS.

COURTS MAY STATE TESTIMONY.

See PLEADING AND PRACTICE.

CREDITOR AND DEBTOR.

See CHANCERY JURISDICTION.

CRIMINAL LAW.

1. *Murder. Objections after verdict.* The prisoner being indicted on a single count for the murder of two persons named, went to trial upon the merits, and when the testimony developed the fact that the killing of each of the two persons was by a separate blow in the same transaction, made no objection to the evidence, nor moved the court to compel the State to elect for which killing it would proceed. *Held,* that the objection of duplicity comes too late after verdict and judgment, and a motion in arrest of judgment will be of no avail. *Forrest* v. *State,* 103.

2. *Witnesses before the grand jury. Contempt.* The attorney-general during the term of the court, has no authority to order the clerk to issue a subpœna for a witness to appear before the grand jury to testify as to gaming. If a witness appear under such subpœna and refuse to answer, he is not guilty of contempt. *Warner* v. *State,* 52.

3. *Same. Same.* A witness properly subpœnaed before the grand jury to testify in regard to gaming, who refuses to answer touching his knowledge of gaming, although his answer may show his own guilt, is guilty of contempt for which he may be fined and imprisoned. *Id.*

4. *Practice. Withdrawing evidence.* The practice of admitting incompetent evidence in the progress of trials, to be subsequently withdrawn, is disapproved, but is not of itself reversible error, unless it can be seen that a party has been injured thereby. *Links* v. *State,* 701.

5. *Same. Evidence. Criminal.* Evidence of other transactions than those charged in the indictment cannot, in general, be received, but where knowledge constitutes an essential ingredient in the guilt this rule is relaxed. In such cases transactions of a like kind with those charged in the indictment may be given. *Id.*

6. *Evidence. Witness.* When the witness is within the jurisdiction of the court, but unable to be present at the trial, and there has been no failure of diligence on the part of the defendant, he cannot be compelled to take what he assumes he can prove by the witness as set out in his affidavit for a continuance, as the testimony of the witness, upon the agreement of the district attorney that the statements of the affidavit should be read as the testimony

CRIMINAL LAW—*Continued.*

of the absent witness. Distinguished from *Petty* v. *State*, 4 Lea, 328. *State* v. *Baker*, 326.

7. *Misdemeanors. Punishment.* All misdemeanors, where the punishment is not prescribed by statute, are punishable by fine or imprisonment or both, within the limits fixed by law, as the court may in its discretion determine. *Atchison* v. *State*, 275.

8. *Indictment. Obtaining goods by false pretense.* An indictment for obtaining goods by false pretenses, under the Code, section 4701, is good which charges the defendant, a merchant, with obtaining goods of another,˙ by false representation, made with intent to defraud that other, of existing facts bearing upon his ability to pay for the goods. *Rothchild* v. *State*, 294.

9. *Accomplice. Misdemeanors.* There are no accomplices in misdemeanors, and therefore the rule that a conviction cannot be had upon the uncorroborated testimony of an accomplice does not apply to misdemeanors. *Truss* v. *State*, 311.

10. *Practice.* Where the record shows that fourteen grand jurors were appointed at the term at which the indictment was found, and no notice of the irregularity was taken in the court below, it is too late to make such objection in the Supreme Court. *Fitzhugh* v. *The State.*

11. *Oath of the jury.* Where in a trial for murder, the record after reciting the defendant plead not guilty, joinder of issue and the names of the jurors polled, " who were elected, empaneled and sworn to well and truly try the issues joined," and does not contain the common law form of " well and truly try and true deliverance make," etc. *Held,* that while it is best that the long established and recognized forms should be observed, the record was sufficient. *Id.*

12. *Evidence.* The general character of the deceased being in issue, it was not error for the court to exclude what the witness had heard of particular acts upon which collateral issues might arise. *Id.*

13. *Evidence.* Threats and menacing and provoking language by deceased to defendant if communicated, are allowed to show the *animus* of the deceased and the state of mind of defendant towards the deceased. *Id.*

14. *Evidence.* The character of the deceased for violence should be considered in determining whether by overt act ˙of the deceased the defendant had just apprehension of reasonable danger. *Id.*

15. *Defendant entitled to charge applicable to facts of case.* A defendant in a State prosecution has a right, not only to a correct charge of the general principles of law applicable to the defense relied on, but to·

CRIMINAL LAW—*Continued.*

a specific charge, if requested, of the law applicable to the particular facts of the case. *Souey* v. *The State*, 472.

16. *Same. Threats.* Where, therefore, upon a trial for murder, the defense being justifiable homicide, it was shown that the deceased was a dangerous man and had threatened on the very day to take the life of the defendant before dark, which threats were communicated to the defendant, and it was further shown that the deceased about dusk went to where the prisoner was and made a demonstration which might reasonably lead the defendant to believe that he intended to carry out his threats, but the proof in one aspect tended to show that he had no such intention, the defendant was entitled, upon request, to a charge that if he honestly believed, upon reasonable grounds, that his life was in danger he would be justified in killing the deceased, whether the deceased went to where the defendant was to execute his threats or not. *Id.*

17. *Breaking into house with intent to commit a felony.* If two persons break into a house, one with intent to commit a felony and another with an innocent purpose, the party having the intent to commit a felony is guilty without reference to the secret purpose which the other party may have had. *Gale* v. *The State*, 489.

18. *Carrying pistol. Merger.* While the defendant can not be convicted of a separate offense for having a pistol at the time he did certain shooting, for which he has been convicted of assault with intent to commit murder, yet if the offense of carrying a pistol was complete before the shooting, the defendant may be convicted of carrying a pistol. *The State* v. *Parker*, 225.

19. *Sentence of the court.* Where a person is convicted of both a felony and a misdemeanor, it is proper that the judgment in the more severe sentence be executed first, because this affords less opportunity of escaping proper punishment. *Id.*

20. *Assault and battery. Charge of the court.* It is not error for the court to omit to charge upon all the grades of the offense embraced in the indictment, if the facts in the case do not require a charge upon the grade of offense omitted. If the omission or the error in the charge is in favor of the defendant he cannot complain. *The State* v. *Parker*, 221.

21. *Charge of court.* It is not error to refuse to charge upon a *mere abstraction. Id.*

22. *Same.* The court charged the jury that when arresting a person, " the officer shall inform him of the authority and cause of arrest, and exhibit the warrant if he has one"—*if the defendant questions his authority*—" except when the person being arrested is in the act of committing some offense in the presence of the officer," and the

CRIMINAL LAW—*Continued.*

testimony showed that the defendant knew that the officer was seek-
ing to arrest him and fled and concealed himself behind some bushes,
and the officer called to him to come out, stating that he had a war-
rant for his arrest, when the defendant shot the officer. *Held*, not
error. *Id.*

23. *Oath of jury.* Where in the entry reciting the swearing of the
jury when empanelled, the oath is, "who being elected, tried and
sworn to well and truly try the issue joined," and in the entry
containing the verdict after giving the names of the jurymen,
it is recited, "who being duly empanelled, elected, sworn and charged,
well and truly to try the issues joined in this case, and the truth to
speak, and a true deliverance on their oaths do say," etc. *Held*,
that if the first recital is defective the latter cures it. *The State* v.
*Hargrove*, 178.

24. *Charge of court.* While it is proper when requested, for the cir-
cuit and criminal judges to charge all the grades of offense in-
volved in the indictment, and reprehensible for them to refuse to
charge, yet when the Supreme Court can see that the prisoner has
not been injured by the failure to charge on all the grades of crime
involved in the indictment, a new trial will not be granted. *Id.*

25. *Lost papers. How supplied.* A lost presentment may be supplied
upon satisfactory affidavits independent of the recollection of the
judge. *State* v. *Harrison*, 10 Yer., 542, overruled. *The State* v. *Gard-
ner*, 134.

26. *Murder Charge of court.* The prisoner being on trial for murder,
the trial judge, upon the hypothesis that the prisoner had at-
tacked the deceased with intent to commit murder in the first
degree, and that at the moment he was jerked away before doing
any injury, a third person, without any concert with him, killed
the deceased, charged the jury as follows: "Should you fail to find
from the proof a conspiracy, but find that the defendant wilfully
and unlawfully engaged the deceased in a fight, and thereupon Eli-
jah Tharpe, without concert between himself and the defendant,
killed the deceased, and you further find that the defendant assailed
the deceased wilfully, deliberately, maliciously and premeditatedly
with the intent to kill him, then the defendant would be guilty of
murder in the first degree." *Held*, that the charge was erroneous.
*Tharpe* v. *The State*, 138.

27. *Same. Same.* His Honor should have qualified the charge by
saying to the jury, that if, at the moment the fatal stroke was given
by Elijah Tharpe, the fight between the defendant and the deceased
had been terminated by the pulling away of the defendant from
the deceased, or if the principal object of Elijah Tharpe was not

CRIMINAL LAW—*Continued.*

to assist the defendant, but to carry out a purpose of his own, then the defendant, in the absence of any concert between the two, would not be guilty of murder in the first degree. *Id.*

DAMAGES.

See ATTORNEYS; EMPLOYER AND EMPLOYE; CORPORATIONS, MUNICIPAL; PLEADING AND PRACTICE; RAILROAD.

1. *Railroads.* Damages sustained in driving a cart across the track of a railroad at a dangerous place, by the driver being thrown from the cart by its toppling motion, are not the proximate result of an obstruction by the railroad company of the public crossing by a standing train of cars, for which an action will lie against the company. *Jackson* v. *Railway Company,* 491.

2. *Charge of court.* In an action for the recovery of damages for a personal injury against a street railroad company the court charged as follows: "It is the duty of the defendant to furnish lights on its cars at night such as will enable its drivers to see objects ahead on the track, with the aid of the street lights, in time to avoid an accident." *Held,* erroneous. *Railway Company* v. *Logue,* 32.

DEED OF GIFT.

See EQUITY OF REDEMPTION.

1. *Evidence. Burden of proof.* Where a person claims by deed of gift from one greatly enfeebled in body and mind, the burden of proof is on him to some extent, not clearly defined, to show that he had no voice in the transaction, or if he had, that his action was free from fault, or that the donor had the benefit of a full consultation with some disinterested third person. *Hester* v. *Hester,* 189.

DESCENT.

*Children of mother's sister.* In the descent of the realty of an intestate to the heirs on the part of his mother, under the Code, sec. 2420, sub-sec. 2, the living children of a sister of a mother will take to the exclusion of the half brothers on the side of the deceased son of a deceased daughter of the sister. *Selby* v. *Hollingsworth,* 145.

DIVORCE.

*Publication. Resident defendant.* The Code, sec. 2456, which allows the petition of a woman for divorce to be heard without service of process or publication, if a subpœna was placed in the hands of the sheriff of the county in which the suit was instituted three months before the time when the subpœna is returnable, only applies when the defendant is a resident of the county in which the suit is brought. *Temple* v. *Temple,* 160.

INDEX. INDEX. **765**

**DRUMMERS.**

See Constitutional Law.

**EJECTMENT.**

See Chancery Pleadings and Practice.

1. *Equitable right.* A recovery in an action of ejectment only determines that the successful party has the better legal title, and will not prejudice the equitable rights of the losing party. *Boro* v. *Harris*, 36.

2. *Title. Common source.* It is only necessary for a plaintiff in ejectment to deraign his title from the person under whom it is proven the defendant claims. *Howard* v. *Massengale*, 577.

3. *Ejectment Bill. Outstanding title.* The outstanding title, which will defeat a plaintiff in ejectment, must be a present, subsisting, operative and available title, not one reverted, abandoned or barred. *Id.*

**ELECTION.**

See Improvements.

**EMPLOYER AND EMPLOYE.**

See Action; Libel and Slander.

1. *Pleadings and practice. Damages. Burden of proof.* In an action by an employe against his employer to recover damages for an injury to the plaintiff caused by a defective machine or tool, the burden of proof is upon the plaintiff, and it was therefore error in the trial judge to charge that the burden of proof was upon the defendant to show that the machine or tool was suitable and sufficient. *Railroad Company* v. *Stewart*, 432.

2. *Fellow-servants.* An employe, as between himself and his employer, undertakes to run all the ordinary risks of the service, and this includes the risk of injuries from the negligence of his fellow-servants. *Railroad Company* v. *Handman*, 423.

3. *Same.* The rule applies where the injury results from the negligence of another employe who is the immediate superior of the injured employe, unless the superior servant so far stand in the place of the master as to be charged, in the particular matter, with the performance of a duty to the inferior which, under the law, the master owes to the inferior, or unless the injury is occasioned by the direct order of the superior in a sudden exigency. *Id.*

4. *Same. Railroads.* Where a fireman on a railroad locomotive was killed by the explosion of the boiler while the engine was standing on the track ready to start with a train of cars, and the engineer failed to come thirty minutes before the time of starting as required

EMPLOYER AND EMPLOYE—*Continued.*

by a rule of the company, it was error to charge the jury that if the proof satisfied them that the engineer had failed to comply with the rule, and were further satisfied that his delay was the proximate cause of the accident, then the plaintiff would be entitled to recover. *Id.*

5. *Same. Damages.* In an action by an employe against the employer to recover damages for the negligence of the employer in not having, or keeping in repair the boiler of an engine, if the trial judge charge the jury in relation to the knowledge of the employer of the defect, he should in the same connection state the effect of the knowledge of the employe of the same defect; for ordinarily if the knowledge or ignorance of the master and servant in respect to the character of the machine are equal, so that both are without fault or in equal fault, the servant cannot recover. *Id.*

ENTRY-TAKER.

See GRANT.

EQUITABLE ESTATES.

See HOMESTEAD.

EQUITY OF REDEMPTION.

See MORTGAGE.

A grantor may, by a mortgage or trust deed made to secure a debt, convey to the creditor, by voluntary gift, the equity of redemption if the land be not redeemed during life, the beneficiary, by reason of relationship or otherwise, being clearly shown to be an object of the grantor's bounty. *Hester* v. *Hester.* 189.

ESTOPPEL.

See WRIT OF ERROR.

1. *Married women and minors. Femes covert* and minors cannot be estopped by refusing to abide by a void agreement which none of them were competent to make, there being no fraud or deceit; mere acquiesence, under disability, cannot affect them. *Sautelle* v. *Carlisle,* 391.

2. *Title by estoppel.* A made deed of conveyance to C, reciting therein that he had previously conveyed same land to B, who had conveyed it to C; B had just before given C a statement in writing that he had given or deeded the land to C. Neither deed was registered, nor was there any other proof of the existence of either. *Held,* that B and A were both estopped to deny title in C, and that C would therefore recover in equity against persons not claiming under B, but by title adverse to his. *Howard* v. *Masseugale,* 577.

EVIDENCE.

See PLEADINGS AND PRACTICE; WILLS, FOREIGN; WILL, LOST; FIRE INSURANCE; PARTNERSHIP; DEED OF GIFT; ATTORNEY; ATTACH-MENT.

EXECUTION SALE.

*Caveat emptor.* The rule of *caveat emptor* applies to a purchaser at execution sale, and if, at the time of sale, the purchaser has actual notice of an equitable right in a third person, especially if possession be held under that·right, he will take subject to the equity; and *a fortiori* if he pay for the purchase by a credit on an antecedent debt. *Boro* v. ·*Harris,* 36.

EXEMPTIONS.

See ROAD LAW.

EXHIBITS.

See CHANCERY PLEADINGS AND PRACTICE.

FEES, PRINTER'S.

*Costs.* Where publication of sale of land is ordered to be made in a daily newspaper, the presumption is that the advertisement is intended to appear in each edition of the paper until the day of sale unless otherwise ordered, and under Code, section 2150, printer's fee of 80 cents per square for the first insertion, and 40 cents per square for each subsequent insertion may be collected. *Allen* v. *Kerr,* 256.

FELLOW SERVANTS.

See EMPLOYER AND EMPLOYE.

FIRE INSURANCE.

1. *Change of risk.   Evidence.   Custom.* In an action on a fire insurance policy issued while the premises were occupied providing that material changes of risk or ownership should be notified to the company, and assented to in writing, the house having burned while unoccupied, it was held not to be error for the court to allow the defendant to prove that there was a general custom of insurance companies doing business at the place where the property was situated, never to take a risk on vacant .or unoccupied property. *Kirby* v. *Insurance Company,* 340.

2. *Cancellation.* A fire insurance policy may be cancelled independent of its stipulations by the mutual parol consent of the insured and insurer, although the unearned premiums are not refunded. *Id.*

3. *Waiver.* A stipulation in a fire insurance policy that in case of cancellation during the life of the policy by the insurer the unearned premium shall be refunded *pro rata* is for the benefit of the insured, and he may waive it. *Id.* ·

FIXTURES.

See REAL ESTATE.

FRAUDULENT CONVEYANCE.

The test as to whether a conveyance is fraudulent or void as to a cred-
itor is: Does it hinder him in enforcing his debt? Does it deprive
him of a right which would be legally effective if the conveyance or
devise had not been resorted to? *Wagner* v. *Smith,* 560.

GAMING HOUSE.

See CONSTITUTIONAL LAW.

GRANT,

*Entry-taker. Deputy.* An entry-taker is competent to make an entry
for his deputy, and an entry made by the deputy in his own
name, but under the direction of the principal, would not be void,
but only voidable at the instance of another enterer before grant,
and not by an enterer and grantee subsequent to the grant. *Berry* v.
*Wagner,* 591.

GUARDIAN.

See PARTNERSHIP.

GUARDIAN AD LITEM.

See CHANCERY PLEADINGS AND PRACTICE; ADMINISTRATOR.

GUARDIAN, GENERAL AND LIMITED.

See CHANCERY JURISDICTION.

GUARDIAN AND WARD.

Pension money received by guardian is for support and maintenance
of ward, and when received the guardian must show that he has
faithfully applied it to the purposes for which it was designed. A
liberal policy may be applied in such cases where the court can
see that the fund has been actually appropriated to and received by
the ward, but if otherwise appropriated the guardian must respond
to the extent he fails to show a proper application of the fund.
*Hume* v. *Warters,* 554.

HOMESTEAD.

1. *Infant children.* Infant children occupying the homestead with their
surviving parent at his or her death, are entitled to the home-
stead exemption during their minority, and cannot be deprived
thereof either by their own act, or the act of third persons. *Farrow*
v. *Farrow,* 120.

2. The homestead right is not a fee simple right, but a right of oc-
cupancy for life. *Fauver* v. *Fleenor,* 622.

HOMESTEAD—*Continued.*

3. *Right of in equitable estates.* The right of homestead exists in equitable estates, but all liens acquired before the homestead has been established must be raised by the claimant of the right of homestead, or it will be sold to satisfy such liens. *Id.*

HUSBAND AND WIFE.

See SEPARATE ESTATE.

IMPROVEMENTS.

*Who entitled to. Measure of value.* Constructive notice·by registration of adverse title will not defeat claim for improvements by party holding under color of title, without actual knowledge of registered title. Improver is entitled to full value of betterments at date of surrender or sale, to be ascertained by report, or to relative value to be shown by report and sale, at the election of the title holder. *Howard* v. *Massengale,* 577.

INQUISITION.

See LUNATICS.

INSOLVENT CORPORATION.

See ATTORNEY'S FEE.

INSOLVENT ESTATE.

See CHANCERY PLEADINGS AND PRACTICE; ADMINISTRATOR.

INTEREST.

See ADVANCEMENT; BONDS.

*Decree of official bond. Appeal.* A money decree of the chancery court, although for the full penalty of an official bond, will carry interest upon affirmance, whichever party appeals. *State* v. *Cole,* 367.

JUROR.

*When exempt.* A party who has regularly served as juror during a term of the circuit court of Shelby county, cannot be compelled to serve another term within twelve months (or the time prescribed by statute), in the criminal court of the city and county. *The State* v. *Godwin,* 268.

JURY IN CHANCERY COURT.

See CHANCERY PLEADINGS AND PRACTICE.

LEVY.

See PARTNERSHIP.

LIBEL AND SLANDER.

The mere posting of a notice by an employer to employes, maliciously forbidding them to trade with a certain person therein named, does not constitute slander or libel. *Payne* v. *Railroad Company*, 507.

LIEN.

See ASSESSMENT ; REVENUE COLLECTORS ; HOMESTEAD.

1. *Subrogation. Resulting trust.* The use of borrowed money for the purpose of paying off a lien on land will not, without more, give the lender a right to be subrogated to the lien, nor create in his favor a resulting trust. *Smith* v. *Nelson*, 461.

2. *Receiver. Rent.* A junior lien creditor who impounds the property by the appointment of a receiver will be entitled to the net proceeds of the rent until the older lien is properly enforced against the rent or the property. *Id.*

3. *Vendor.* A payment by the maker of notes secured by an express vendor's lien, which notes a sub-vendee has agreed to pay in part consideration of his purchase, will not extinguish the lien. *Knox* v. *McCain*, 197.

LIEN, VENDOR.

See CHANCERY PLEADINGS AND PRACTICE.

Where a suit has been commenced to enforce a vendor's lien, none being reserved on the face of the deed, the equity fastens on the land and no creditor can intervene to defeat the right under that proceeding. *Wagner* v. *Smith*, 560.

LIMITATION.

See ADMINISTRATION ; WRIT OF ERROR.

1. *Statute of. Code, section* 2762 b. The terms of this statute embrace persons temporarily absent as well as non-residents, and make no distinction between those who are non-resident by removal from the State and those who have always been so. *Carlin* v. *Wallace*, 571.

2. *Remaindermen.* Seven years is required to complete the bar of the statute against remaindermen, after the termination of the life estate, even when the adverse occupant is claiming the fee pending the life estate. *Sautelle* v. *Carlisle*, 391.

3. *Power of bank president to bind the bank.* Where L., D. & Co., a firm of which D. was a member, guaranteed to M. & Co., a New York firm, certain advances, and agreed to hold them harmless on account of same, and M. & Co. made the advances to the defendant bank in Memphis, more than six years before action

LIMITATION—*Continued.*

brought, and D. having become president of the bank, and being in New York on other business within six years before action brought, saw M. & Co., who threatened to sue the bank, whereupon D., the president, admitted the claim sued on to be just and due by the bank, and requested time, and promised in case of delay to sue, the bank should not plead the statute of limitations, and M. & Co. waited as requested. *Held,* this action of the president revived the debt against the bank, and the same was not barred by the statute of limitations, and that the fact that this was done in New York, and that D., the president, was guarantor of the debt, there being no antagonism between him and the bank, made no difference. *Morgan & Co.* v. *Bank,* 234.

LOST PRESENTMENT.

See CRIMINAL LAW.

LUNATICS.

*Inquisition in county court. Proceedings.* Where the estate of the lunatic does not exceed five hundred dollars, the county court has exclusive jurisdiction. If it exceeds five hundred, the jurisdiction of the chancery and county court is concurrent, and in such cases the latter must conform to the rules and regulations laid down for the conduct of similar business in the chancery court as far as practicable. Code, construed, sections, 3681, 3692, 3695, 3696, 4196. *Albright* v. *Rader,* 574.

MARRIED WOMEN.

See ESTOPPEL; WRIT OF ERROR.

1. A married woman may rely upon her coverture in bar of the liabilities of a firm of which she may have, during coverture, become a member. *Frank* v. *Anderson,* 695.

2. *Agent. Separate estate.* A married woman, in whose name as the owner of a stock of goods a retail business is carried on by the husband as her agent, is not liable personally on notes executed by the husband in her name for new goods, nor is her separate estate bound for the payment of the debt thus created in the absence of a legal contract to that effect. *Federlicht* v. *Glass and Wife,* 481.

3. *Suit upon notes executed for goods. Pleading and practice.* If, upon being sued at law upon such notes, the married woman pleads her coverture, the title to the goods would revert to the vendors, and they could sue for the same in replevin, or by bill in equity to reach the specific goods, or their proceeds if capable of being identified and followed; but the vendor creditors, in the absence of proof of positive fraud on the part of the married woman, have no lien

MARRIED WOMEN—*Continued.*

upon, and cannot subject other goods of her separate estate for their demands, nor hold her liable as trustee or otherwise for the value of their goods which may have been lost, destroyed or otherwise disposed of. *Ib.*

## MARRIAGE SETTLEMENT.

1. *Infancy.* Although both of the contracting parties to an ante-nuptial settlement of the wife's property, real and personal, in trust for her and her heirs, be under age, the settlement would at most only be voidable, not void, by reason of the infancy. *Lancaster* v. *Lancaster,* 126.

2. *Same. Disaffirmance of contract.* The husband might disaffirm the contract so far as he was personally concerned, notwithstanding the subsequent marriage, and would affirm it by acts or unreasonable delay. *Id.*

3. *Same. When right to disaffirm accrues.* The right of an infant to disaffirm in equity a conveyance of land or personalty because of infancy, accrues as soon as the deed is executed, and, therefore, a woman who executes an ante-nuptial settlement, and then marries while under age, may affirm or disaffirm the deed during coverture; and unreasonable delay, with a recognition of the deed in the meantime by accepting and insisting upon its benefits, will validate it. *Id.*

4. *Trust settlement. Estate.* A trust settlement of the wife's own property to her separate use without any power of anticipation, and with only the limited right of disposition by last will, or instrument in the nature of a last will, does not give the wife an absolute estate in the property. *Id.*

## MECHANIC'S LIEN.

See CHANCERY PLEADINGS AND PRACTICE; PLEADINGS AND PRACTIEE.

## MERCHANT.

See TAX, PRIVILEGE.

## MINORS.

See MARRIAGE SETTLEMENT; ESTOPPEL; CHANCERY PLEADINGS AND PRACTICE; COUNTY COURT JURISDICTION; WRIT OF ERROR; HOMESTEAD.

## MORTGAGE.

See EQUITY OF REDEMPTION.

1. *Courts should enforce the contract.* If a mortgage or trust deed made to secure a debt expressly stipulate for a sale of the prop-

MORTGAGE—*Continued.*

erty, in case of default in payment, free from the equity of redemption, it is the duty of the court, in the absence of some controlling equity, to enforce the contract. *Knox* v. *McCain*, 197.

2. *Subsequent assignment.* A mortgage of the interest which the mortgagor has in land under an agreement to convey, although without any covenant of warranty, if duly registered, will prevail over a subsequent trust assignment to secure borrowed money with covenant of warranty, the grantor acquiring the legal title after both conveyances. *Smith* v. *Nelson*, 461.

MUNICIPAL CORPORATIONS.

1. *Taxation by.* Under an ordinance declaring certain occupations and business transactions privileges, and taxing them as such, among others enumerating "hacks, carriages, drays and wheeled vehicles run for a profit," a firm of merchants are liable who kept a dray used for the hauling of goods to the depot for their non-resident customers and for which service drayage was charged. *Mayor, etc., of Knoxville* v. *Sanford, Chamberlain & Albers*, 545.

2. The power of ascertaining and establishing grades of streets may, by ordinance or vote, be vested in the officers or agents of a municipal corporation, and it will be bound by the acts of such officer or agent in pursuance of such authority. Code construed, sections 1392, 1394. *Mayor, etc., of Chattanooga* v. *John Geiler*, 611.

3. *Measure of damages.* Damages to private property by change of the grade of streets, may be mitigated by reason of benefits common to all property owners by the improvements. *Id.*

4. *State tax collected by.* The tax upon cases tried in municipal courts is to be paid by the parties convicted, and is not a tax imposed upon the city or in the exercise of one of its agencies or powers, nor is it costs in cases tried before these courts. A party convicted in these courts cannot be imprisoned to secure the payment of this tax. The tax is to be paid by the party found guilty. *Eastman* v. *Mayor, etc., of Nashville*, 717.

NEGLIGENCE.

See EMPLOYER AND EMPLOYE; PLEADINGS AND PRACTICE.

NEW SUIT.

See WRIT OF ERROR.

NON-RESIDENT.

See CHANCETY PLEADINGS AND PRACTICE; LIMITATION.

NOTICE.

See PARTNERSHIP; ASSETS, REAL; IMPROVEMENTS.

NUL TIEL RECORD.

See PLEADINGS AND PRACTICE.

OATH OF JURY.

Soe CRIMINAL LAW.

OBSTRUCTION, MALICIOUS.

See RAILROADS.

OFFICIAL BOND.

See INTEREST.

PARTIAL LAW.

See CONSTITUTIONAL LAW.

PARTNERSHIP.

See MARRIED WOMAN.

1. *Levy on interest of partner.* If, in legal effect, a partnership be created between parties, all that an individual creditor of one of the partners could reach by a levy of an execution on the interest of that partner in partnership realty, or that a purchaser under the execution sale could acquire, would be the interest of the partner after a partnership account. *Boro* v. *Harris*, 36.

2. *Action of partner to avoid debts.* If a person, having the capital, hold out two other persons as the only partners in a business, owned and conducted exclusively by him, in order to avoid certain claims which were likely to come against him, it is a point of grave difficulty, not now determined, how far such person could enforce against the other parties in possession the consideration of the conveyance of property to them bought with the ostensible partnership assets. *Id.*

3. *Abandonment. Purchaser with notice.* If such person took possession of real estate thus bought, remaining in possession until his death two years thereafter, and then one of the ostensible partners, who is also the guardian of the infant children of the deceased, take possession, and use the rents partly to pay partnership debts and partly for the benefit of his wards, and after the debts are paid exclusively for their benefit, the other partner never taking possession nor claiming any interest therein, and both afterwards joining in a conveyance of the realty to the children, there would be an abandonment of all claim except as trustee for the children, and a purchaser at execution sale of the interest of the partner who was never in possession, with notice of the equity of the children, would only acquire the legal title subject to the equity. *Id.*

PARTNERSHIP—*Continued.*

4. A partner may become a creditor of his firm, and the debt is his individual property, which he may assign or transfer to a third party, and in the absence of conflict with other creditors is entitled to be paid out of the partnership effects. The assignee, in such case, stands upon the same ground as other creditors of the firm. *Frank* v. *Anderson,* 695.

5. *Joint contractors. Evidence.* When D and C were sued jointly for provender sold D, on his individual credit to feed team used in carrying mail, he being the only party then known to the plaintiff as being concerned in carrying the mail, and C contended that he was not liable, and the plaintiff introduced in evidence a written contract between one S, who was the original contractor, and C and D upon its face showing that C was a joint contractor with D, and principal in carrying said mail, C insisting that in fact he was only surety for D, and that he was put as principal in the contract to enable him to draw the money simply for indemnifying himself as surety and for advances made by him to D. *Held,* it was error for the court to refuse to construe the contract and instruct the jury as to the meaning and legal import of same. *Kendrick* v. *Cisco,* 247.

PENSION MONEY.

See GUARDIAN AND WARD.

PERSONALTY.

See ADMINISTRATION.

PLEADINGS AND PRACTICE.

See ATTORNEYS; APPEAL; WRIT OF ERROR; MARRIED WOMAN.

1. *Mere irregularities will not affect sale.* If a superior court have jurisdiction of the subject-matter and the parties, mere irregularities in the exercise of that jurisdiction will not render the proceedings void, nor, upon a writ of error, affect the validity of sales of property made in the cause to innocent third persons. *Ridgely* v. *Bennett,* 210.

2. *Scire facias. Plea to merits.* If to a *scire facias* against heirs, based upon a judgment against the personal representative, to show cause why execution should not issue against the real estate descended, the heirs appear and plead to the merits, they thereby waive any irregularity in the issuance of the *scire facias,* either in the preliminary order, or the form of the writ. *Bank* v. *Marr,* 108.

3. *Evidence. Written instrument. Construction.* The general rule in this State is that the construction of a written instrument introduced as evidence, if complete and intelligible in itself, is matter of law for the court, expert testimony being admissible in proper cases to aid the court in reading the instrument. *Railroad Company* v. *McKenna,* 280.

PLEADINGS AND PRACTICE—*Continued.*

4. *Recovery of penalties.* Under the act of 1865, ch. 15 (Rev. Code, sec. 4927, *b, c, d*), which makes a railroad company liable to forfeit and pay a penalty of $100, upon a failure of the company, during any one trip of the passenger cars, to announce the stopping place or station at which the train stops, only one penalty can be recovered up to the bringing of the suit. *Parks* v. *Railroad Company*, 1.

5. *Court may state testimony to jury.* The court has the right to state the testimony of a witness to the jury upon their request. *Atchison* v. *State*, 275.

6. *Evidence. Burden of proof.* As a general rule, proof of the mere fact of injury will not, without more, establish negligence on the part of the defendant so as to shift the burden of proof. *Railroad Company* v. *Stewart*, 432.

7. *Same. Negligence.* The cases in which proof of the injury and that it was caused by the defendant will entitle the plaintiff to recover in the absence of countervailing testimony, are cases in which the evidence that establishes the injury establishes also facts and circumstances from which negligence on the part of the defendant may be fairly implied. *Id.*

8. *Same. Same. Burden of proof.* Where a fireman on a locomotive was injured by a jet of steam from an oil cup, which he was in the act of filling, and the proof left it doubtful whether the accident was the result of his own negligence or occasioned by a defect in the cup or its appliances, the case would be within the general rule, not the exception, and the burden of proof would rest on the plaintiff. *Id.*

9. *Suit for failure to perform contract. What may be recovered.* It is the settled law of this State, confirmed by a declatory statute, that a plaintiff, who has not performed his contract, may nevertheless recover compensation for the partial performance equal to, and limited by the value of the benefit conferred, the defendant, by the very statement of the principle, being entitled to abate the recovery by the damages sustained, these damages extending to such as might be recovered by a cross-action. *Gibson, Lee & Co.* v. *Carlin*, 440.

10. *Same. Same. Recoupment.* The defense of recoupment in such cases, which would be good at law without a cross-action, would be equally good in equity without a cross-bill. *Id.*

11. *Same. Measure of damages.* The measure of damages in such cases is usually the difference between the contract price and the value of the work as done, or the cost of replacing the work so as to make it equal to the work contracted for, to which may be added the actual damages from any injury, the proximate result of the breach of

PLEADINGS AND PRACTICE—*Continued.*

contract, occurring before the accrual of the defendant's right of action for the breach, or within the reasonable time thereafter required to replace the defective work. *Id.*

12. *Same.* *Same.* *Recoupment.* A mechanic, who undertakes to put on a new tin roof on a building, and fails to perform his contract, is liable to have the contract price recouped by deduction for the defective work, and the actual injury to the building from rain water penetrating such roof by reason of the defective work. *Id.*

13. *Same. Same.* Although a contract stipulate for the completion of work by a specified time, yet if both parties consent to an extension of the time, the liability of the mechanic for injury occasioned by defects in the work will continue during such extension, and until the expiration of a reasonable time thereafter within which to rectify the defects. *Id.*

14. *Res adjudicata.* To make a judgment or decree in one suit a bar to another suit between the same parties, it must appear not only that the subject-matter of the two suits are the same, but that the proceedings were for the same object and purpose, the same point being directly in issue. *Coulter* v. *Davis and Wife.* 451.

15. *When a decree in chancery is no bar to action at law.* A decree in chancery, on final hearing, dismissing a bill filed to perpetually enjoin as a nuisance the flow of water over the complainant's land by reason of a mill-dam, is no defense to an action at law brought by the same party against the same defendant to recover damages for the overflow. *Id.*

16. *Issue of nul tiel record triable by court.* The issue of *nul tiel record* joined on a plea of former adjudication which makes no averment of extrinsic facts, is triable alone by the court upon inspection of the record, and it is error to submit the issue to a jury; but if the jury find the facts as the court should have found, the error would not be so material as to require reversal. *Id.*

PLEA OF FORMER SUIT.

See CHANCERY PLEADINGS AND PRACTICE.

POLICY.

See FIRE INSURANCE.

POOL-SELLING.

See CONSTITUTIONAL LAW.

PRINCIPAL AND SURETY.

The right of action accrues to a surety when the debt is paid by the surety. *Gibson* v. *Jones,* 684.

PRINTER'S FEES.

See FEES.

PRIORITY.

See ATTACHMENT.

PRIVILEGE.

See TAXES.

PROTEST FOR NON-PAYMENT.

See BONDS.

PUBLICATION.

See FEES, PRINTER'S; DIVORCE.

PURCHASE MONEY.

See SALES, VOID.

PURCHASER FROM DEVISEE.

See ASSETS, REAL.

RAILROADS.

See EMPLOYER AND EMPLOYE; ACTIONS, LOCAL AND TRANSITORY; TAXES: PLEADINGS AND PRACTICE; ACTION; DAMAGES.

1. *Damages for land taken.* The statutory remedy provided by section 1347 of Code, is not exclusive, and the land-owner is not bound to exhaust that remedy before resorting to a court of equity. *Parker* v. *Railroad Company*, 668.

2. *Orders.* An accident having occurred on a railroad by means of an obstruction put on the road-way by an unknown third person at a particular trestle in mile 60, the superintendent issued a written order to the employes of the passenger trains to slow up, run carefully, and keep a sharp lookout at mile 60, and while the order was still being acted on another accident occurred from a similar obstruction at the same trestle, by which the plaintiff was injured. *Held,* that the order required the engineer to slow up enough to stop the train on short notice when the emergency did arise, and the court properly instructed the jury to that effect. *Railroad Company* v. *McKenna*, 280.

3. *Malicious obstruction.* The duty of railroad companies in cases of malicious obstruction considered. *Id.*

REAL ESTATE.

The most controlling test as to whether property connected with real estate is to be deemed realty or a mere chattel, removable at pleasure of owner, is the intention and purpose of the creation. *Johnson* v. *Patterson*, 626.

RECEIVER.

See LIEN.

RECORDS OF COURT.

*Duty of clerk.* The clerk is the legal custodian of the records of his court, and should preserve them intact; and if in fact the record has been altered improperly in any respect, his duty is to certify the record as it originally existed, ignoring the change. *Kennedy* v. *Kennedy*, 24.

RECOUPMENT.

See PLEADINGS AND PRACTICE.

REGISTRATION.

See IMPROVEMENTS.

Where at sheriff's sale of land under execution the plaintiff in execution purchased, and the defendant in execution procured G to redeem the land or to purchase it and give him longer time to redeem, and after the time for redemption had expired, the sheriff and the defendant in execution made deed to G, and G voluntarily executed an instrument agreeing to convey the land to defendant in execution whenever he should pay G what he owed him. *Held*, that said promise or agreement was not such contract for sale of land as vested title or required registration. *Anderson & Co.* v. *Ingram*, 270.

REMAINDERMEN.

See LIMITATIONS.

RENTS.

See PLEADINGS AND PRACTICE, LIEN; CHANCERY PLEADINGS AND PRACTICE; PARTNERSHIP.

RES ADJUDICATA.

*Practice.* Where a demurrer to a bill was sustained by the chancellor and an appeal was taken to the Supreme Court, where, by consent, the cause was referred to the court of arbitration (then in existence), and they awarded and found that the decree of the chancellor was erroneous and should be reversed, and the cause remanded to the chancery court, etc., and the award was approved by the Supreme Court and made the decree of same. *Held*, the award, to all intents and purposes, became the judgment of the Supreme Court, and that although the Supreme Court may review and reverse its own rulings in subsequent cases, yet the decrees once rendered are final and conclusive in the particular cases in which they are made, as to the matters adjudged. *Grommes & Uhlrick* v. *Theime*, 320.

REVENUE ·COLLECTORS.

*Lien for taxes paid.* A collector of revenue who has paid the taxes assessed on real estate sold under proceedings not recognized as regular, is entitled to be substituted to the lien of the State and county for the taxes thus paid, and a bill in chancery is the proper proceeding to enforce this right. *Thomas* v. *Hammer*, 620.

ROAD LAW.

1. *Exemptions.* The act of 1881, section 4, does not repeal section 1620 of the Code authorizing the county court to exempt certain persons from working on public roads. *Willaford* v. *Pickle*, 672.

2. *Jurisdiction of county court.* The power of the county court to exempt certain persons from working on public roads is the exercise of the general police power of that court, and are not strictly judicial proceedings, therefore the strict rules with reference to statutory jurisdiction should not be applied. *Id.*

RULE OF COURT.

See CHANCERY PLEADINGS AND PRACTICE.

SALE OF COTTON.

See CONSTITUTIONAL LAW.

SALE OF LAND.

See REGISTRATION.

*Vendor and vendee. Streets.* Where the owner of land sells it as building lots, bounding them on streets of a specified width as laid down on a map, although not actually opened, the purchaser acquires a legal right as against the grantor to have the streets opened to the width designated in the map. And if the land on which the streets are laid off belong to the vendor, the purchaser may, as against him and those claiming under him by the same sale, enforce the opening of the streets, or the keeping of them opened, and, if this mode of relief cannot be had, may have an abatement of the purchase price. *Henderson* v. *Donovan*, 289.

SALES, VOID.

*Return of purchase money.* Purchase money received upon a void sale of land is treated as an equity attaching to the land, and a subsequent purchaser, with notice, takes it subject thereto. *Sautelle* v. *Carlisle*, 391.

SALE OF LAND, HOW AFFECTED BY IRREGULARITIES.

See PLEADINGS AND PRACTICE.

SALE OF LAND TO PAY DEBTS.

See ADMINISTRATOR.

**SCIRE FACIAS.**

See PLEADINGS AND PRACTICE.

**SEPARATE ESTATE.**

*Suits in respect to separate estate. Parties.* The rule of equity is that the husband must be made a defendant to all suits in respect to the wife's separate estate, and not a complainant, although no question arise between him and the wife; and when the husband seeks an object adverse to the wife, the bill is considered his bill, and the wife must be made a defendant. *Lancaster* v. *Lancaster,* 126.

**STATUTES CONSTRUED.**

Acts 1865, ch. 15 ...................................................................... 2
" 1870, ch. 80 ................................................................. 121
" 1873, ch. 40 ................................................................. 252
" 1875, page 189 ............................................................. 240
" 1879, ch. 76 ................................................................. 348
" 1879, ch. 106 .............................................................. 311
" 1881. ch. 96 ............................................................... 303
" 1883, ch. 105 .............................................................. 724
" 1883, ch. 106 .............................................................. 202
" 1883, ch. 138 .............................................................. 228
" 1883, ch. 230 .............................................................. 162

**STAYOR.**

An order for the stay of execution on two judgments against T. C. W. & Co., and P and T and W, does not authorize the justice to enter the stay upon a judgment against T. C. W. & Co., although at the time another suit was pending before him against T. C. W. & Co. and P and T and W, judgment on which was not rendered until after date of order to stay. *Shipley, Roane & Co.* v. *Goodwin,* 666.

**STOCKS.**

See CONVERSION.

Where stock in a corporation is endorsed in blank with power of attorney to transfer on the books of the corporation, and delivered to a bank as collateral security for a note, the legal and equitable title to same passes to the bank. *Bank* v. *Farrington,* 333.

**STREETS.**

See CORPORATIONS, MUNICIPAL; SALE OF LAND.

**STREET CAR.**

See DAMAGES.

**SUBROGATION.**

See REVENUE COLLECTORS; LIEN.

SUPREME COURT.

See COSTS.

*Practice.* To reverse a judgment upon the ground that the evidence does not sustain the verdict, there should be preponderance against it. *Fitzhugh* v. *State,* 258.

SURETIES ON BOND.

See CLERKS.

TAXES.

See CONTRACTS, LEGISLATIVE; MUNICIPAL CORPORATIONS; CONSTITUTIONAL LAW; ASSESSMENT; CORPORATIONS.

1. *Reassessment.* Where taxes have been declared void· by reason of the illegality of the act authorizing them, they may be reassessed under act of 1873, chapter 40. *Boyd, Mosby & Co.* v. *Hunt,* 252.

2. *Sale. Description.* A tax sale of less than the whole of a town lot in these words: "Eighty-four feet of this lot," does not sufficiently define the quantity of land bid off, and is void. *Wands and Wife* v. *Brien,* 732.

3. *Same.* A sale of so many feet front of a town lot and running back of equal width to the depth of the lot would be good; and so, it seems, would be a sale of a definite fractional part of the lot, as for example one-tenth, one-fourth, or one-half, or of so many acres of a tract of land. *Id.*

TAXES, HIGHWAY.

*Railroads.* Railroads are liable for highway taxes assessed upon the value of the roads as returned by the commissioners; whether the proper distribution of the taxes among the road districts is made by the clerk of the county court is a matter for the districts and not for the railroad tax-payer on a contest of payment. *State* v. *Railroad Company,* 500.

TAX, PRIVILEGE.

1. *Privilege. Commercial agency.* The conducting of a commercial agency is created a privilege, and taxable as such in each county in which an office is kept, by the act of 1883, chapter 106, section 4. *Dun & Co.* v. *Cullen,* 202.

2. *Merchant.* Although a merchant's license be issued for a year under the act of 1883, chapter 105, yet if the business be terminated sooner, as for example, by fire, the license and the tax should, under the act of 1883, chapter 29, be limited to the period of the actual exercise of the privilege, counting by quarters of the year. *Eastman* v. *Litterer,* 723.

TITLE.

  See ESTOPPEL.

TITLE, OUTSTANDING.

  See EJECTMENT.

TORT OF AGENT.

  See CORPORATION.

TRUST ASSETS.

  See ATTORNEYS' FEES.

TRUST DEED.

  *Rights of Beneficiaries.* Where a trustee under a deed of trust on land made to secure three notes, one of which is held by a third party, sells to pay only two of the notes in the hands of a party who bids his debt on the land, and the trustee conveys to him, the effect is the purchaser buys subject to the rights of the third party with knowledge, and holds the land subject to the rights of the third party, and neither the purchaser nor the trustee are personally liable to such third party in the absence of fraud. But if the land is afterwards sold to an innocent purchaser for value, the purchaser at the trustee's sale is then personally liable to the third party holding the note. *Wicks & Wife* v. *Caruthers,* 353.

TRUST, RESULTING.

  See LIEN.

WAIVER.

  See FIRE INSURANCE.

WILLS.

  1. *Construed.* The will of John Ramsey bequeaths all his real estate to his wife, and provides that "at her death it is my wish and desire that my real estate be divided equally between my son, John C., and daughter, Martha S. The heirs of my deceased daughter, Mary Jane, being hereafter provided for in this instrument. After settling all claims for and against the estate, the balance, together with my personal property, I leave to the judgment of my son, John C., and Martha S., believing they will do what is just and right by each other, and their deceased sister's children." Out of the personal property certain special bequests are made, including one to his grand-daughter, Susan C. Rowan. The will further provides, "After deducting what I gave to my deceased daughter, Mary Jane, during her life, and paying what my estate is responsible for, it is my wish and desire that my executor pay to my deceased daughter's children, after they become of age, the balance, should there be any

WILLS—*Continued.*

balance, that may be coming to them as the heirs of their mother's part of my estate. In the event of the marriage of my daughter, Martha S., before the death of her mother, it is my wish that she be provided with a home, either by a division of the farm or by my son John C., paying to her the value of the half interest of said farm as they may agree upon." *Held,* that under said will the children of the deceased daughter took no interest in the real estate. *Rowan* v. *Warner,* 550.

2. *Construction.* The will of the testator provided: "I will, bequeath and devise all the remainder of my estate, both real and personal, to my two daughters, Julia and Elizabeth, for their sole and separate use, share and share alike, free from the contracts, debts or liabilities of their respective husbands, and in case of the death of either of my said daughters above named, then my will is that all that part of my estate which hereby I give to her, shall go and descend to her children." *Held,* that an absolute estate is given to the daughters exclusive of the marital rights of the husband, with a conditional limitation over, in the nature of an executory devise to their children on the death of either of them. *Hottell and Wife* v. *Browder,* 676.

WILLS, FOREIGN.

*Will pass lands. When. Authentication.* A foreign will, proved and recorded in the State of the testator's domicil according to the requirement of the laws of this State as prescribed by the Code section 2182, will pass lands in this State as between the parties without record or registration here, and a copy of such will duly authenticated under the act of Congress will be evidence. *Smith* v. *Neilson,* 461.

WILLS, LOST.

*Proof to set up.* To set up a lost will of realty requires the clearest and most satisfactory evidence of two unexceptionable witnesses. *Hunter* v. *Gardenhire,* 658.

WITNESSES.

See CRIMINAL LAW.

WRIT OF ERROR.

1. *Lis pendens.* A writ of error is a new suit and the *lis pendens* under it does not begin until the service of the summons or subpœna. *Woolridge* v. *Boyd,* 151.

2. *Same. Estoppel.* S instituted an action of ejectment against N which N enjoined; the injunction suit was dismissed on final hearing and the action of ejectment was tried, resulting in a verdict and

WRIT OF ERROR—*Continued.*

judgment for S; writ of possession was executed, and N, by written contract, became tenant of S. A transcript of the injunction case was filed in the Supreme Court for writ of error, N being tenant as aforesaid, conveyed to W by quit-claim deed, and S, before notice of the writ of error, conveyed to B. In the Supreme Court the injunction suit was reversed and decree rendered in favor of N. Held, N was estopped from claiming the land and that W stood upon no higher ground than N. *Id.*

3. *Writ of error.* The proper mode of proceeding to obtain a writ of error, after the lapse of two years from the rendition of the judgment or decree, is by a petition, properly sworn to, stating the facts which take the petitioner's case out of the usual limitation. *Ridgely* v. *Bennett,* 206.

4. *Same. Motion to dismiss.* The appellee may contest the material facts of the petition by plea, and those facts will be taken as true upon a motion to dismiss the writ of error. *Id.*

5. *Same.* A writ of error is in the nature of a new suit, and any person who brings himself within the saving of the statute is entitled to it as of right. *Id.*

6. *Same. Infant.* Any person who will give the bond required by law may sue out a writ of error for an infant as his next friend. *Id.*

7. *Same. Same. Married women.* The Code, sec. 3182, which authorizes infants and married women to prosecute writs of error within two years after the removal of disability, merely extends the time for suing out the writ, and the writ may be sued out at any time within the extended period, whether the disability exist or has been removed. *Id.*

WRITTEN INSTRUMENT, CONSTRUCTION.

See PLEADINGS AND PRACTICE.

VENDOR.

See LIEN.

VENDOR AND VENDEE.

See SALE OF LAND.